# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| EMERGENCY STAFFING SOLUTIONS, INC., | ) ) ) |
| Plaintiff, | ) ) CIVIL ACTION NO. 4:18cv93 |
| vs. | ) ) Judge Mazzant ) |
| PICKENS COUNTY HEALTH CARE AUTHORITY d/b/a PICKENS COUNTY MEDICAL CENTER, | ) ) ) ) |
| Defendant. | ) |

---

| | |
|---|---|
| PICKENS COUNTY HEALTH CARE AUTHORITY d/b/a PICKENS COUNTY MEDICAL CENTER, | ) ) ) ) |
| Counterclaim-Plaintiff, | ) ) |
| vs. | ) ) |
| EMERGENCY STAFFING SOLUTIONS, INC., | ) ) ) |
| Counterclaim-Defendant. | ) |

## ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
## AND AMENDED COUNTERCLAIM

Pickens County Health Care Authority d/b/a Pickens County Medical Center ("PCMC") answers Plaintiff's First Amended Complaint as follows, and also asserts the following Amended Counterclaim against Plaintiff Emergency Staffing Solutions, Inc. ("ESS").

# AMENDED ANSWER

No part of any allegation is admitted by inference or implication. Unless specifically, expressly, and explicitly admitted below, each and every allegation of the First Amended Complaint is denied. Defendant responds to the specifically-enumerated paragraphs of the First Amended Complaint as follows:

## I.
## INTRODUCTION

1. Defendant denies that it has breached any contract with ESS and denies that ESS is entitled to the relief sought.

2. No paragraph 2 was included in the First Amended Complaint; therefore, no response is required.

## II.
## PARTIES

3. Admitted.

4. Admitted.

## III.
## JURISDICTION AND VENUE

5. Admitted.

6. Defendant admits that venue is proper in this District.

7. Defendant denies that it established minimum contacts with Texas, but Defendant consents to personal jurisdiction in this Court based on the forum-selection clause contained in the Agreement.

8. The allegations in this paragraph are denied as stated, but Defendant consents to personal jurisdiction in this Court based on the forum-selection clause contained in the

Agreement.

9. The allegations in this paragraph are denied as stated, but Defendant consents to personal jurisdiction in this Court based on the forum-selection clause contained in the Agreement.

10. The allegations in this paragraph are denied as stated, but Defendant consents to personal jurisdiction in this Court based on the forum-selection clause contained in the Agreement.

11. Admitted.

12. Admitted.

## IV.
## FACTUAL ALLEGATIONS

13. It is admitted that ESS holds itself out as specializing in the business of contracting with hospitals to provide, among other things, emergency department management and physician staffing services.

14. Defendant is without sufficient knowledge or information to admit or deny the allegations in this paragraph.

15. Defendant is without sufficient knowledge or information to admit or deny the allegations in this paragraph.

16. Defendant is without sufficient knowledge or information to admit or deny the allegations in this paragraph.

17. Defendant is without sufficient knowledge or information to admit or deny the allegations in this paragraph.

18. Admitted.

19. Denied.

20. Denied. Defendant terminated the Agreement effective October 31, 2017, due to ESS's default.

21. Denied.

22. Defendant denies that this paragraph accurately recites the complete terms of the cited provision.

23. Defendant denies that this paragraph accurately recites the complete terms of the cited provision.

24. Denied.

25. It is admitted that Plaintiff contacted Defendant and made demands; however, Defendant denies that Plaintiff is entitled to the relief demanded.

26. Denied.

27. Defendant denies that it has breached the Agreement and denies that Plaintiff is entitled to monetary damages.

## V.
## CAUSES OF ACTION/REMEDIES

**Count 1:** **Breach of Contract**

28. Defendant incorporates its responses to the preceding paragraphs, as if fully set forth herein.

29. Denied as stated. The Agreement speaks for itself.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

**Count 2:** **Quantum Meruit**

34. Defendant incorporates its responses to the preceding paragraphs, as if fully set forth herein.

35. Denied as stated.

36. It is denied that Plaintiff is entitled to any further compensation.

37. Denied.

38. Denied.

**Count 3:** **Attorneys' Fees**

39. Defendant incorporates its responses to the preceding paragraphs, as if fully set forth herein.

40. Denied.

41. Denied.

## VI.
## REQUEST FOR RELIEF

Defendant denies that Plaintiff is entitled to any of the relief requested in Paragraphs A through F.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The First Amended Complaint fails to state a claim against Defendant upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Defendant denies each and every material averment of Plaintiff's First Amended Complaint and denies any liability to the Plaintiff.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's breach of contract claim is barred, in whole or in part, by its own breach of contract and/or wrongful conduct.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by fraud.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, acquiescence, and/or ratification.

## SEVENTH AFFIRMATIVE DEFENSE

Even if Plaintiff has suffered any damages for which Defendant might otherwise be liable, recovery of such damages is barred by Plaintiff's failure to mitigate the same.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's quantum meruit claim is or may be barred by an express contract between the parties.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's breach of contract claim is barred, in whole or in part, by failure of consideration.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are subject to set-off or recoupment.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover attorneys' fees.

## TWELFTH AFFIRMATIVE DEFENSE

Defendant reserves the right to assert any additional defenses as may be disclosed during the course of additional investigation and discovery.

WHEREFORE, Defendant demands that judgment be entered in its favor, and against Plaintiff, with prejudice, and awarding Defendant its costs and attorneys' fees incurred in this action.

## **AMENDED COUNTERCLAIM**

Defendant Pickens County Health Care Authority d/b/a Pickens County Medical Center ("PCMC") asserts the following Counterclaim against Plaintiff Emergency Staffing Solutions, Inc. ("ESS").

## PARTIES

1. Plaintiff/Counterclaim defendant ESS is a Texas corporation with its principal place of business in Collin County, Texas.

2. Defendant/Counterclaim plaintiff PCMC is an Alabama public corporation with its principal place of business in Carrolton, Alabama.

## JURISDICTION AND VENUE

3. Jurisdiction over this Counterclaim exists pursuant to 28 U.S.C. § 1332, in that Plaintiff/Counterclaim defendant ESS is a citizen of Texas and Defendant/Counterclaim plaintiff PCMC is a citizen of Alabama, and the amount in controversy exceeds $75,000.

4. Jurisdiction over this Counterclaim is also conferred by 28 U.S.C. § 1367. The Counterclaim arises out of the same transaction or occurrence that is the subject-matter of the First Amended Complaint, and therefore this Court has supplemental jurisdiction over the Counterclaim.

5. Venue is proper under 28 U.S.C. § 1391(b)(1) or 1391(b)(3).

6. Also, the Agreement at issue contains a forumselection clause providing that PCMC's counterclaim against ESS "may only be brought in the state and federal Courts located in Collin County, Texas."

## Factual Allegations

7. PCMC operates the Pickens County Medical Center, which is a rural hospital located in Carrolton, Alabama. Among other services, the hospital provides an Emergency Department with six exam rooms and two trauma suites that is staffed 24 hours per day, seven days per week.

8. ESS holds itself out as specializing in the business of contracting with hospitals to provide, among other things, emergency department management and physician staffing services.

9. In its marketing and promotional materials, ESS proclaims that it is "in the business of Emergency Department management – not just staffing" and that its "programs

provide a range of added-value services to manage, performance improvement, improve patient satisfaction, and increase ED and inpatient volumes."

10. Among other things, ESS represents in its promotional materials that "[o]ur service doesn't stop once we've supplied your facility with stable, full-time physicians. We provide ongoing support to improve your team's skills and capabilities, and to streamline your operational processes, such as billing, marketing, admission, data gathering, and payments collection. Our programs and services will help your facility stay on the right path to success. Our ability to work closely with partners sets us apart from other physician staffing companies in the country."

11. On or about September 28, 2015, ESS submitted a proposal to provide an "Emergency Department Program" to PCMC and included a lengthy description of the services that are included in the program.

12. In its proposal, ESS promised to "ensure compliance with appropriate core measures" and to "increase DRG coding accuracy and provide appropriate documentation in support of the most accurate CPT code."

13. ESS further promised in its proposal that it would provide "effective physician training and value added services aimed at volume maximization." Included among the "value added services" ESS promised to provide to PCMC were "performance improvement, patient satisfaction, admission maximization, market programs, community perception/needs surveying, case management and utilization management."

14. In reliance on these promises and representations made by ESS in its proposal to PCMC and in its promotional materials, on or about June 1, 2016, PCMC entered into a

9

Coverage Services Agreement ("Agreement") with ESS, whereby ESS was to provide emergency department physician staffing and management services.

15. ESS has breached the Agreement in a number of ways and has failed to perform in accordance with the promises and representations made to PCMC to induce it to enter into the Agreement.

16. Pursuant to Section 1.2 of the Agreement, PCMC had the right to approve each physician assigned by ESS to provide services in the hospital.

17. In addition, ESS represented and warranted in Section 1.3 of the Agreement that it would only assign physicians that are duly licensed and in good standing to engage in the unrestricted practice of medicine in the State of Alabama.

18. ESS also agreed in Section 1.13 of the Agreement to notify PCMC of any investigation or regulatory action involving any physician's medical license.

19. Section 1.2(c) provided PCMC with the right to insist upon replacement of any physician upon the loss of the physician's unrestricted license to practice medicine, including by reason of failure to meet continuing medical education requirements.

20. Nevertheless, at the time the parties executed the Agreement, one of the physicians assigned by ESS to work at PCMC had just entered into a Stipulation and Consent Order with the Alabama Medical Licensure Commission based upon his failure to meet his continuing medical education requirements for 2015. Based upon his Stipulation and Consent Order, the assignment of this physician (the "Reprimanded Physician") to PCMC violated Sections 1.2(c), 1.3(a), and 1.13 of the Agreement.

21. ESS also breached Section 1.3(d) of the Agreement by failing to notify PCMC that the Reprimanded Physician was working with a restriction on his license under a Consent Order with the Alabama Medical Licensure Commission.

22. Moreover, the Reprimanded Physician's treatment resulted in two bad outcomes during the very first shift he worked at PCMC.

23. PCMC notified ESS that the Reprimanded Physician was not acceptable and was not to be assigned to PCMC, yet ESS continued to assign him to work at the hospital, in violation of Section 1.2 of the Agreement.

24. ESS also repeatedly assigned two other physicians to PCMC after being informed that those physicians were not acceptable to PCMC, in violation of Section 1.2 of the Agreement.

25. The Agreement contains numerous provisions relating to obligations of the assigned physicians with respect to medical records, which were breached by ESS.

26. Physicians assigned by ESS routinely failed or refused to input orders into PCMC's Electronic Medical Record system ("EMR") as required by PCMC and despite repeated requests that the physicians do so.

27. Section 1.4 of the Agreement requires physicians assigned by ESS to keep "accurate and complete medical records in accordance with the Hospital's medical staff bylaws, rules, regulations, and policies, and will file them in a manner acceptable to Hospital."

28. Section 5.1 of the Agreement requires ESS assigned physicians to "generate medical records and reports pertaining to patients treated which records and reports shall be kept in the format as determined by Hospital." PCMC required an EMR format, but the ESS physicians failed to comply.

29. Section 5.1 of the Agreement also requires that records and reports "be prepared in a timely manner" and the Agreement, at Exhibit A paragraph 2(g), requires ESS physicians to "complete medical records prior to the end of their next shift worked." ESS physicians frequently breached these requirements by failing to complete their medical record entries in a timely manner, or not at all.

30. At least one physician assigned by ESS was intentionally non-compliant with his medical record responsibilities and refused to enter his orders into the EMR, stating that it is not his job.

31. Another ESS physician was assigned to PCMC by ESS without receiving the proper training from ESS on using the EMR, which ESS was obligated to provide pursuant to the Agreement.

32. The failure and refusal of ESS physicians to comply with their obligations to promptly complete their medical record entries in the EMR has caused PCMC to lose funds it was otherwise entitled to receive.

33. The Centers for Medicare & Medicaid Services ("CMS") established the Medicare and Medicaid Electronic Health Record Incentive Program to encourage hospitals and other providers to adopt, implement, upgrade, and demonstrate meaningful use of certified Electronic Health Record technology ("EHR").

34. Through the program, incentive payments are available for certain professionals and hospitals that "meaningfully use" EHR technology. In order to qualify for the "meaningful use" payments, the hospital must demonstrate that it has met certain Core Measures involving its use of certified EHR technology.

35. The failure of the ESS-supplied physicians to consistently enter orders for patients using the EMR, in violation of the Agreement, caused PCMC to not meet one of the Core Measures for the incentive program and to lose $271,000 in meaningful use payments for 2016.

36. Section 1.5 of the Agreement states that "if any regulatory, accrediting, or licensing agency should determine that the Hospital does not meet or exceed the acceptable standards prescribed and which are the responsibility of Group to satisfy under this Agreement, any and all action necessary to effect compliance should be taken by Group within a reasonable time (not to exceed thirty (30) days unless otherwise agreed). . ." CMS, which is a regulatory agency, has established the Meaningful Use objectives and measures as standards for utilization of EMRs. The failure to properly utilize the EMR constitutes a failure of ESS to meet CMS standards.

37. Section 1.6 of the Agreement required ESS and its physicians to cooperate with PCMC and its employees, as reasonably requested, in the completion of any forms necessary for third party reimbursement. In order to be reimbursed by CMS for EMR usage under CMS's Meaningful Use objectives and standards, ESS's physicians were required to complete certain percentages of their orders and notes in the EMR, which they failed to do.

38. ESS also failed to provide the additional services that it promised and represented would be provided in conjunction with its management of the emergency department at PCMC.

39. ESS did nothing to "ensure compliance with appropriate core measures" or with respect to "effective physician training" and instead assigned physicians that were not properly trained on EHR or refused to comply with EHR requirements.

40. Likewise, ESS failed to provide "performance improvement, patient satisfaction, admission maximization, market programs, community perception/needs surveying, case management and utilization management" as promised to induce PCMC to enter into the Agreement.

41. To the contrary, during ESS's tenure, PCMC's case mix decreased and PCMC saw increased dissatisfaction with PCMC's emergency department among its patients and the community.

42. Not only did ESS repeatedly assign unacceptable physicians to work at PCMC, ESS had a practice of sending delinquency notices to patients that had paid their bills in full, and charging rates that far exceeded those permitted by insurance.

43. Numerous PCMC patients complained that ESS's billing practices caused them to receive delinquent notices after having already paid ESS for services.

44. Many PCMC patients complained that because ESS does not have a contract with United Healthcare, it did not bill the insurance company for services rendered to United Healthcare beneficiaries. Instead ESS billed the beneficiaries directly at rates substantially in excess of the United Healthcare's allowable rates. ESS either knew or should have known that this practice would, and did, cause dissatisfaction among PCMC's patients who were insured by United Healthcare, thereby damaging PCMC.

45. PCMC provided oral and written notice to ESS on numerous occasions that it was not complying with its obligations under the Agreement and that it had failed to perform in accordance with the promises and representations made to PCMC to induce it to enter into the Agreement, including written letters dated January 18, 2017, and February 8, 2017.

46. Despite providing ESS with an opportunity to cure its defaults, ESS failed to remedy the issues and its breach of the Agreement.

47. On September 29, 2017, PCMC reiterated its position that ESS remained in breach of the Agreement, and provided 30 days' notice of PCMC's intent to terminate the Agreement, effective at the end of business on October 31, 2017, as provided by Paragraph 6.3 of the Agreement.

48. Thereafter, despite PCMC's termination of the Agreement pursuant to Paragraph 6.3 of the Agreement, ESS has continued to send invoices to PCMC purporting to bill for services that are not being provided.

## COUNT I
### (Breach of Contract)

49. Defendant realleges and incorporates herein the preceding paragraphs, as if fully set forth herein.

50. ESS has breached the Agreement as set forth in the factual allegations herein.

51. ESS's breach of the Agreement has caused PCMC monetary damages, including but not limited to the loss of $271,000 in meaningful use payments.

52. ESS's conduct and its breach of the Agreement has also caused damage to PCMC's reputation in the community and to its patient relationships, leading to loss of patients and patient revenues.

# COUNT II
## (Fraudulent Inducement)

53. Defendant realleges and incorporates herein the preceding paragraphs, as if fully set forth herein.

54. In order to induce PCMC to enter into the Agreement, ESS made material representations regarding the services it would provide to PCMC, as set out more specifically in the factual allegations herein.

55. ESS's representations to PCMC were false and, at the time they were made, ESS knew the representations were false or made them recklessly as a positive assertion without knowledge of the truth.

56. ESS intended for PCMC to act upon the representations and to enter in to the Agreement.

57. PCMC detrimentally relied on the representations of ESS and PCMC suffered injury as a result.

WHEREFORE, PCMC demands judgment against ESS, as follows:

A. Awarding PCMC compensatory and consequential damages in an amount to be proven at trial plus interest at the maximum legal rate;

B. Awarding PCMC punitive damages in an amount sufficient to punish ESS and deter it and others from similar wrongful conduct in the future;

C. Awarding PCMC reasonable attorneys' fees and costs; and

D. Awarding PCMC such other and further relief as the Court deems just and proper.

Respectfully submitted,

| | |
|---|---|
| s/ *Benjamen S. Dyer* | s/ *Diane B. Maughan* |
| Marc S. Culp | James F. Henry |
| State Bar No. 05212700 | jfh@cabaniss.com |
| mculp@cdhllp.com | Diane B. Maughan |
| Benjamen S. Dyer | dbm@cabaniss.com |
| State Bar No. 00795332 | *Admitted pro hac vice* |
| Amanda B. Montgomery | |
| State Bar No. 24065779 | CABANISS, JOHNSTON, GARDNER, DUMAS & O'NEAL LLP |
| amontgomery@cdhllp.com | 2001 Park Place North, Suite 700 |
| | Birmingham, AL 35203 |
| CULP & DYER, LLP | Telephone: (205) 716-5200 |
| 222 E. McKinney | Facsimile: (205) 716-5389 |
| Suite 210 | |
| Denton, Texas 76201 | |
| Telephone: (940) 484-2236 | |
| Telecopier: (940) 484-4436 | |

Attorneys for Pickens County Health Care Authority d/b/a Pickens County Medical Center

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered users of the system who have appeared in this case, including:

John M. Hafen
David R. Wortham, Jr.
HANSHAW KENNEDY HAFEN, LLP
1415 Legacy Drive, Suite 350
Frisco, Texas 75034

This 21st day of March, 2018.

s/ *Diane B. Maughan*
OF COUNSEL